# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**DANIEL CHRISTOPHER JACKSON,**

    **Petitioner-Defendant,**

v.                                                            **Civil Action No. 3:12-cv-166**
                                                             **Criminal Action No. 3:12-cr-12**
                                                             **(Judge Bailey)**

**UNITED STATES OF AMERICA,**

    **Respondent-Plaintiff.**

## REPORT AND RECOMMENDATION/OPINION

### I.    INTRODUCTION

On December 19, 2012, Daniel Christopher Jackson ("Petitioner"), proceeding *pro se*, filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. (Civil Action No. 3:12-cv-166, Docket No. 1; Criminal Action No. 3:12-cr-12, Docket No. 21.) That same day, the Clerk of Court mailed Petitioner a Notice of Deficient Pleading, which informed him that he had twenty-one (21) days to correct his Motion by filing it on the correct form as per Local Rule of Prisoner Litigation Procedure 3.4. (Docket No. 24.)[1] Petitioner filed his correct form ("Court-Approved Motion") on January 22, 2013. (Docket No. 26.) On February 8, 2013, the undersigned entered an Order directing the Government to respond to Petitioner's motion. (Docket No. 28.) The Government filed its response on March 7, 2013. (Docket No. 32.) Subsequently, on May 22, 2014, Petitioner filed a motion for appointment of counsel. (Docket No. 33.)

The undersigned now issues this Report and Recommendation on Petitioner's motion without holding an evidentiary hearing. For the reasons stated below, the undersigned recommends that the

---

[1]From this point, all docket numbers refer to entries in Criminal Action No. 3:12-cr-12.

District Judge deny and dismiss Petitioner's motion.

## II. FACTS

### A. *Conviction and Sentence*

On February 23, 2012, the United States Attorney's office filed a one-count Information charging Petitioner with possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B). On February 29, 2012, Petitioner appeared before United States Magistrate Judge David J. Joel to enter a guilty plea to the Information pursuant to a written plea agreement that he had signed on January 7, 2012. Petitioner waived his right to prosecution by Indictment and consented to proceed by Information. (Docket No. 6.) In his written plea agreement, Petitioner waived his right to appeal and collaterally attack his sentence. Specifically, Petitioner's plea agreement contained the following language concerning his waiver:

> Defendant is aware that Title 18, United States Code, Section 3742 affords a defendant the right to appeal the sentence imposed. Acknowledging all this, and in exchange for the concessions made by the United States in this plea agreement, the defendant knowingly and voluntarily waives the right to appeal any sentence which is within the maximum provided in the statute of conviction or in the manner in which that sentence was determined on any ground whatever, including those grounds set forth in Title 18, United States Code, Section 3742. **The defendant also waives his right to challenge his sentence or the manner in which it was determined in any collateral attack, including but not limited to, a motion brought under Title 28, United States Code, Section 2255 (habeas corpus).** The United States does not waive its right to appeal the sentence; however, in the event that there would be an appeal by the United States, Defendant's waiver contained in this paragraph will be voided provided defendant complies with the provisions of Rule 4(b)(1)(A)(ii) of the Federal Rules of Appellate Procedure.

(Docket No. 7 at 3-4 (emphasis added).)

At the time of his plea, Petitioner was 24 years old and had earned his high school diploma. (Docket No. 30 at 4:7-13.) Petitioner had never been treated for mental illness or addiction to controlled substances, and he had no type of disability or hearing impairment. (Id. at 4:14-20.)

Subsequently, the following colloquy occurred:

> THE COURT: Do you understand that under the term of the plea agreement, you're giving up your right to appeal any sentence imposed upon you by the Court, as well as the right to file habeas corpus petitions attacking the legal validity of the guilty plea and the sentence?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: Do you understand? Mr. Lambert, do you believe that your client fully understands the importance and significance of the waiver of his appellate rights?
>
> MR. LAMBERT: I do, Your Honor. I have gone over the entire case with him and his family. He does understand it.

(Id. at 11:7-19.) Petitioner also confirmed his understanding that the written plea agreement contained the full agreement between himself and the Government. (Id. at 11:20-23.) The Court reviewed all the rights Petitioner was foregoing by entering a plea of guilty. (Id. at 16:22-18:13.) Based on that review, the Court determined that Petitioner understood the consequences of his plea of guilty. (Id. at 18:14-16.) During the hearing, the Government presented the testimony of West Virginia State Police Sergeant David Boober to establish a factual basis for the plea. (Id. at 19:1-22:8.)

After the Government presented Sergeant Boober's testimony, Petitioner advised the Court that he was guilty of the one-Count Information. (Id. at 22:9-14.) Additionally, Petitioner testified under oath that no one had attempted to force him to plead guilty and that his plea was not the result of any promises other than those contained in the plea agreement. (Id. at 22:15-25.) When asked, Petitioner acknowledged that his counsel had adequately represented him and that his counsel had not left anything undone regarding his defense. (Id. at 23:13-19.) In conclusion, Magistrate Judge Joel determined that Petitioner was competent to enter a plea of guilty, that Petitioner's plea "was

3

freely and voluntarily made", that Petitioner had "full knowledge and understanding of the consequences of the plea", and that there was a basis in fact for the plea. (Id. at 23:25-24:9.) Petitioner did not object to this finding.

Petitioner appeared before Chief United States District Judge John Preston Bailey for sentencing on May 8, 2012. Chief Judge Bailey accepted Petitioner's plea agreement and his guilty plea. (Docket No. 31 at 6:1-4.) Petitioner, through counsel, asked that the Court apply a downward departure. (Id. at 10:21-22.) Chief Judge Bailey "varied the sentence down by two levels, taking into consideration a number of factors, including the defendant's age, the history of his own abuse, and the fact that the computer enhancement is really present in virtually every case that we see at this time." (Id. at 24:16-21.) He sentenced Petitioner to 70 months' imprisonment to be followed by ten (10) years of supervised release. (Docket No. 18.)

## B. Direct Appeal

Petitioner did not file a direct appeal.

## C. Federal Habeas Corpus

### 1. Petitioner's Motion

Petitioner raises the following claims:

1. Ineffective assistance of counsel because counsel "failed to explain the nature of the federal charges and the consequences of accepting a plea"; and

2. Ineffective assistance of counsel because counsel "failed to attempt to introduce any form of legal or factual mitigating factors or even address the criteria of 18 USC § 3553."

(Docket No. 26-1 at 5.)

### 2. Government's Response

In opposition to Petitioner's motion, the Government asserts the following:

1. Petitioner's motion should be dismissed because he waived his right to file it pursuant to his written plea agreement;

2. Petitioner is bound by the testimony he gave during the plea colloquy; and

3. Petitioner has not met his burden to demonstrate ineffective assistance of counsel.

(Docket No. 32 at 3-7.)

### III. ANALYSIS

*A.  Applicable Law Regarding Petitioner's Waiver*

**1. Law Governing Waivers of Direct Appeal and Collateral Attack Rights**

"[T]he guilty plea and the often concomitant plea bargain are important components of this country's criminal justice system. Properly administered, they can benefit all concerned." Blackledge v. Allison, 431 U.S. 63, 71 (1977). However, the advantages of plea bargains are only secure when "dispositions by guilty plea are accorded a great measure of finality." Id. The Fourth Circuit has recognized that the Government often secures waivers of both appellate and collateral attack rights "from criminal defendants as part of their plea agreement." United States v. Lemaster, 403 F.3d 216, 220 (4th Cir. 2005).

Courts have routinely held that "defendants can waive fundamental constitutional rights such as the right to counsel, or the right to a jury trial." United States v. Marin, 961 F.2d 493, 496 (4th Cir. 1992). Specifically, the Fourth Circuit has held that "a waiver-of-appeal-rights provision in a valid plea agreement is enforceable against the defendant so long as it is 'the result of a knowing and intelligent decision to forgo the right to appeal.'" United States v. Attar, 38 F.3d 727, 731 (4th Cir. 1994) (citations omitted). However, a defendant still retains the right to appellate review on limited grounds, such as when a sentence above the maximum penalty provided by statute is imposed or

5

when a sentence is imposed based on a constitutionally impermissible factor. Id. at 732. Furthermore, the Attar court recognized that a defendant cannot "fairly be said to have waived his right to appeal his sentence" on the ground that he was wholly deprived of counsel during sentencing procedures. Id.

Eleven years later, the Fourth Circuit determined there was no reason to distinguish between waivers of appellate rights and waivers of collateral attack rights. Lemaster, 403 F.3d at 220 n.2. The Fourth Circuit noted that all courts of appeals to have considered the issue have "held that the right to attack a sentence collaterally may be waived so long as the waiver is knowing and voluntary." Id. at 220. The Lemaster court did not address whether the same exceptions that were noted by the Attar court apply to a waiver of collateral attack rights, but it did note that it saw "no reason to distinguish" between the two. Id. at 220 n.2; see also United States v. Cannady, 283 F.3d 641, 645 n.3 (4th Cir. 2000) (collecting cases where the court has determined that waivers of § 2255 rights are generally valid).

The Fourth Circuit has not yet issued a binding decision defining the scope of collateral attack waivers and so has not yet imposed on this Court a standard governing "the extent to which an ineffective assistance of counsel claim can be precluded by a § 2255 waiver." Braxton v. United States, 358 F. Supp. 2d 497, 502 (W.D. Va. 2005).[2] However, several courts have held that collateral attack waivers should be subjected to the same conditions and exceptions applied to waivers of direct appellate rights. Cannady, 283 F.3d at 645 n.3 (collecting cases). Furthermore, most courts of appeals have determined that waivers of collateral attack rights encompass claims "that do not call

---

[2]The Fourth Circuit issued an unpublished per curiam opinion affirming the Western District of Virginia's ruling in Braxton. See United States v. Braxton, 214 F. App'x 271 (4th Cir. 2007) (per curiam).

into question the validity of the plea or the § 2255 waiver itself, or do not relate directly to the plea agreement or the waiver." Braxton, 358 F. Supp. 2d at 503.

### 2. Law Governing Whether a Waiver is Knowing and Intelligent

The Fourth Circuit has held that the determination of whether a waiver of appellate and collateral attack rights is "knowing and intelligent" "depends 'upon the particular facts and circumstances surrounding [its making], including the background, experience, and conduct of the accused.'" Attar, 38 F.3d at 731 (quoting United States v. Davis, 954 F.2d 182, 186 (4th Cir. 1992)). This determination is often made upon reviewing the "adequacy of the plea colloquy" and determining, in particular, "whether the district court questioned the defendant about the appeal waiver." United States v. Blick, 408 F.3d 162, 169 (4th Cir. 2005). However, an ultimate decision is "evaluated by reference to the totality of the circumstances." United States v. General, 278 F.3d 389, 400 (4th Cir. 2002).

### B. *Petitioner's Ineffective Assistance of Counsel Claims*

### 1. Standard Governing Claims of Ineffective Assistance of Counsel

The Supreme Court has set forth a two-prong test for determining whether a convicted defendant's claim of ineffective assistance of counsel warrants the reversal of his conviction. Strickland v. Washington, 466 U.S. 668, 687 (1984). First, "the defendant must show that counsel's performance was deficient." Id. Second, "the defendant must show that the deficient performance prejudiced the defense." Id. These two prongs are commonly referred to as the "performance" and "prejudice" prongs. Fields v. Att'y Gen. of Md., 956 F.2d 1290, 1297 (4th Cir. 1992).

To satisfy the "performance" prong, the defendant must demonstrate that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth

7

Amendment." Strickland, 466 U.S. at 687. However, a reviewing court does not "grade" trial counsel's performance, and there is a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." Carter v. Lee, 283 F.3d 240, 249 (4th Cir. 2002). Essentially, the reviewing court must not "second-guess" counsel's performance and must "evaluate counsel's performance 'from counsel's perspective at the time.'" Hunt v. Lee, 291 F.3d 284, 289 (4th Cir. 2002). Furthermore, the standard of reasonableness is objective, not subjective. See Strickland, 466 U.S. at 688.

To satisfy the "prejudice" prong, the defendant must demonstrate that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 687. Therefore, if counsel's errors have no effect on the judgment, the conviction should not be reversed. See id. at 691. A defendant who alleges ineffective assistance of counsel following a guilty plea has an even higher burden: "he must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); Hooper v. Garraghty, 845 F.2d 471, 475 (4th Cir. 1988). The Fourth Circuit has recognized that if a defendant "cannot demonstrate the requisite prejudice, a reviewing court need not consider the performance prong." Fields, 956 F.2d at 1297.

2. **Petitioner's Claim Regarding Ineffective Assistance of Counsel and the Validity of His Guilty Plea**

In his motion, Petitioner alleges that his counsel's "complete lack of experience in federal child pornography cases was not only undisclosed, but led to his failure to properly explain the rage of sentences available." Petitioner further states that counsel "failed to explain the nature of the federal charges and the consequences of accepting a plea. As a result of this objectively unreasonable representation, [Petitioner] was forced to accept a plea by virtue of threatening him

8

with a life sentence." (Docket No. 26-1 at 5.) Petitioner further asserts that counsel failed to explain the plea offer to him, did not explain the Sentencing Guidelines and how they related to his plea offer, and ignored his questions and concerns. (Id. at 8-9.)

A defendant's sworn representations made at a plea hearing "carry a strong presumption of verity" and "constitute a formidable barrier against any subsequent collateral proceedings." Blackledge, 431 U.S. at 74. Therefore, guilty pleas are not normally subject to collateral attack, but can be so challenged on the ground that the plea was not knowing or voluntary. Bousley v. United States, 523 U.S. 614, 621-22 (1998). A defendant may attack the voluntary nature of his plea by demonstrating that he received ineffective assistance of counsel. Tollett, 411 U.S. at 267. However, "in the absence of extraordinary circumstances, . . . allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always 'palpably incredible' and 'patently frivolous or false.'" Lemaster, 403 F.3d at 221 (citations omitted).

During the Rule 11 plea colloquy, Petitioner testified that he had received his high school diploma and that he had no hearing impairment or disability that would prevent him from participating in the hearing. (Docket No. 30 at 4:11-20.) He also testified that he had not taken any medication, drugs, or alcohol within the previous 24 hours. (Id. at 3:18-20.) During the colloquy, Petitioner's counsel stated that he had gone over the "entire case" with Petitioner and his family. (Id. at 11:17-19.) At no time did Petitioner object to counsel's statement. Petitioner further understood that the maximum sentence of incarceration that he could receive was ten (10) years. (Id. at 14:6-11.) He testified that he understood that the sentence he received may differ from any sentence that he and his counsel had determined. (Id. at 15:20-23.) Petitioner denied that anyone had promised or

9

predicted the exact sentence he would receive. (Id. at 23:4-7.) He further testified that he was pleading guilty of his own free will, that no one had attempted to force or threaten him to plead guilty, and that his plea was not the result of any promises other than those contained in his written plea agreement. (Id. at 22:5-25.) Petitioner stated that his attorney had adequately represented him, and that there was nothing that counsel had not done that Petitioner thought he should have done or anything that counsel did improperly. (Id. at 23:16-19.)

Overall, Petitioner asserted that he understood the consequences of his plea agreement throughout the Rule 11 colloquy. Although Petitioner now claims that counsel coerced him into signing the plea agreement, "[a]bsent clear and convincing evidence to the contrary, [he] is bound by the representations he ma[de] under oath during [his] plea colloquy." Fields, 956 F.2d at 1299. Accordingly, given Petitioner's statements during the Rule 11 colloquy, the undersigned finds that Petitioner's plea was validly entered into, and his first claim regarding ineffective assistance of counsel is without merit.

### 3. Petitioner's Claim of Ineffective Assistance at Sentencing

As his second claim for relief, Petitioner asserts that counsel "failed to attempt to introduce any form of legal or factual mitigating factors or even address the criteria of 18 USC § 3553." (Docket No. 26-1 at 5.) Specifically, Petitioner claims that counsel failed to file a sentencing memorandum and failed to "address any of [his] mental health issues." (Id. at 10.) He claims that he told counsel that he had been "sexually abused by a babysitter on a regular basis for over a year as a prepubescent child," but that counsel "failed to present this critical fact in mitigation." Overall, Petitioner claims that "no mitigation evidence was presented." (Id. at 11.)

The undersigned finds that these claims of ineffective assistance fall within the scope of

Petitioner's collateral attack waiver. The Fourth Circuit has noted that a petitioner's claims of ineffective assistance of counsel at sentencing fall outside the scope of a collateral attack waiver only if the petitioner has been completely deprived of counsel. See Lemaster, 403 F.3d at 220 n.2; Attar, 38 F.3d at 732-33. Petitioner's claims do not suggest that he was wholly deprived of counsel during his sentencing hearing. Cf. Millon v. United States, Nos. 3:08cv333, 3:05cr341, 2009 WL 3258580, at *4 (W.D.N.C. Oct. 7, 2009) (finding that the waiver provision in petitioner's plea agreement was "absolute bar" to claim that his sentence enhancement under U.S.S.G. § 2D1.1 was improper). The undersigned has already determined that Petitioner knowingly and voluntarily entered into the waiver contained in his written plea agreement; accordingly, the undersigned further finds that Petitioner's claims regarding counsel's performance at sentencing fall within the scope of that waiver.

Even if Petitioner's claims were not within the scope of the waiver, they are meritless. While the docket does reflect that Petitioner's counsel did not file a sentencing memorandum, Petitioner has not demonstrated how counsel's failure to do so prejudiced his defense. See Strickland, 466 U.S. at 687. During the sentencing hearing, Chief Judge Bailey noted that Petitioner had a total offense level of 29 with a criminal history category of I. (Docket No. 31 at 6:17-19.) At those levels, the Guidelines called for a term of incarceration ranging from 87 to 108 months. (Id. at 6:21.) At sentencing, Petitioner's counsel did note that Petitioner "was abused by neighbors" and "was the product of abuse himself." (Docket No. 31 at 8:21, 9:11.) Counsel further represented that Petitioner had no prior criminal history and that he had accepted responsibility for his offense. (Id. at 9:21-22.) At the end of his statement, Petitioner's counsel asked "for a downward departure from 87 months." (Id. at 15:24.) The Government objected to the request for a variant sentence. (Id. at 18:7-8.)

In imposing sentence, Chief Judge Bailey granted Petitioner's motion for a variant sentence

and "varied the sentence down by two levels, taking into consideration a number of factors, including the defendant's age, the history of his own abuse, and the fact that the computer enhancement is really present in virtually every case that we see at this time." (Id. at 24:16-21.) In doing so, Chief Judge Bailey imposed a below-Guidelines range sentence of 70 months' imprisonment. (Id. at 18:14-15.) Given that counsel did effectively present information regarding Petitioner's childhood abuse and other matters in support of mitigation, the undersigned finds that Petitioner has not demonstrated that counsel acted unreasonably. See Strickland, 466 U.S. at 687. Accordingly, for these reasons, the undersigned recommends that Petitioner's claims of ineffective assistance of counsel at sentencing be dismissed.

### IV.    OTHER MATTERS

As noted above, on May 22, 2014, Petitioner filed a "Motion to Request Appointment of Counsel." (Docket No. 33.) Prisoners do not enjoy "a constitutional right to counsel when mounting collateral attacks upon their convictions." Pennsylvania v. Finley, 481 U.S. 551, 554 (1987). Under this Court's Local Rules, the Court "may, in its discretion, appoint an attorney to represent a *pro se* prisoner at any point in the proceedings if it finds that a particular need or exceptional circumstance exists." LR PL P 16. However, the undersigned finds that no particular need or exceptional circumstance exists in Petitioner's case and recommends that Petitioner's "Motion to Request Appointment of Counsel" be denied.

### V.    RECOMMENDATION

For the foregoing reasons, the undersigned recommends that Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Civil Action No. 3:12-cv-166, Docket No. 1; Criminal Action No. 3:12-cr-12, Docket No. 21) be **DENIED**

and **DISMISSED WITH PREJUDICE**. The undersigned further recommends that Petitioner's "Motion to Request Appointment of Counsel" (Criminal Action No. 3:12-cr-12, Docket No. 33) be **DENIED**.

Within **fourteen (14) days** after being served with a copy of this report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the Honorable John Preston Bailey, Chief United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Court directs the Clerk of the Court to provide a copy of this Report and Recommendation to all counsel of record as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia. The Court further directs the Clerk of the Court to mail a copy of this Report and Recommendation to the *pro se* Petitioner Daniel Christopher Jackson.

DATED: June 9, 2014

*John S. Kaull*

JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE